OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law,* Equal protection of laws, Opinions of the Justices.
*Insurance,* Life insurance: savings bank life insurance.

There is no presumption of validity of a proposed statute when it is con-
sidered in an advisory opinion of the Justices.   [781–782]
It would not be a denial of equal protection of the laws to enact legislation
applicable to savings banks furnishing savings bank life insurance, but
not to life insurance companies, prohibiting refusal of coverage to an
applicant, otherwise insurable, on the sole ground of blindness.   [784]
If a question considered by the Justices in an advisory opinion arises sub-
sequently in litigation, it must be considered anew by the court.   [785]

On April 17, 1963, the Justices submitted the following
answer to a question propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit this answer to the question in an order adopted by
the House of Representatives on April 9, 1963, and trans-
mitted to us on April 10, 1963.   The order recites the pend-
ency before the General Court of a bill, House No. 436, a
copy of which was transmitted with the order.   The bill is
entitled, ''An Act prohibiting savings banks from denying
insurance coverage to blind persons who are otherwise in-
surable,'' and reads: ''Section 16 of chapter 178 of the
General Laws, as amended by section 4 of chapter 260 of the
acts of 1947, is hereby further amended by adding at the end
the following sentence: — Such rules shall provide that no
applicant otherwise insurable shall be denied coverage for
the sole reason that he is a blind person.''

The question is: ''Is it constitutionally competent for the
General Court under the equal protection clause of the 14th
Amendment of the Constitution of the United States or

under Article X of Part the First of the Constitution of Massachusetts to provide that no applicant for savings bank life insurance, otherwise insurable, shall be denied coverage for the sole reason that he is a blind person, substantially as provided in said bill, without extending such provisions to all insurance companies writing life insurance within the Commonwealth?''

It is to be noted that the bill merely undertakes to prohibit the denial of the benefits of savings bank life insurance solely on the ground of blindness. Nothing is said about premiums. If a higher premium would be warranted for the insuring of an insurable blind person, there is nothing in the bill to preclude it. If there were, there would be a question as to due process which pertinently might be asked. The stated ground of constitutional doubt is limited to whether the omission to extend the proposed provision to all insurance companies writing life insurance within the Commonwealth renders the bill repugnant to that portion of the Fourteenth Amendment to the Constitution of the United States which provides that no State shall ''deny to any person within its jurisdiction the equal protection of the laws,'' or to its counterpart, art. 10 of the Declaration of Rights. See *Universal Adjustment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 320.

The statute, which the bill would amend, as it presently stands, G. L. c. 178, § 16 (as amended through St. 1947, c. 260, § 4), reads, ''The state medical director, appointed under section twelve of chapter twenty-six, shall be subject to the supervision and control of the trustees of the General Insurance Guaranty Fund and shall prescribe the rules relating to health or acceptability of the applicant for insurance, and shall act as supervising and advising physician for the medical department of all the savings and insurance banks.''

Not enough appears in the order to reveal any ground why the bill should apply only to savings bank life insurance. Surely there are no facts in the realm of general knowledge upon which we may draw as an aid. There is no

presumption of validity when we consider a proposed stat-
ute in an advisory opinion. *Opinion of the Justices,* 337
Mass. 777, 781–782. If there are reasons for a valid legisla-
tive distinctive treatment, they must be found in the origin,
history, and characteristics of savings bank life insurance.

Savings bank life insurance, as it exists under G. L. c. 178,
was first enacted in St. 1907, c. 561. It was intended pri-
marily for wage earners, and had its origin in studies initi-
ated in 1905 by Louis D. Brandeis, who himself called it
"wage earners' life insurance" in a magazine article. See
Mason, "Brandeis A Free Man's Life," pp. 157 et seq.
(N. Y. 1946); Berman, "Massachusetts System of Savings
Bank Life Insurance," U. S. Dept. of Labor, Bur. Labor
Stat. Bull. No. 615 (1935), and supplement Bull. No. 688
(1941) "Operation of Savings Bank Life Insurance in
Massachusetts and New York"; 1939 House Doc. No. 2124.

"The division of savings bank life insurance shall consist
of the body corporate known as the General Insurance
Guaranty Fund." G. L. c. 26, § 9 (as amended through
St. 1947, c. 260, § 1). There are seven trustees of the fund,
including the commissioner of savings bank life insurance,
appointed one each year for a seven year term by the Gov-
ernor with the advice and consent of the Council. The trus-
tees serve without compensation and are selected from per-
sons who are trustees of savings banks or of savings and
insurance banks. *Id.* G. L. c. 26, § 10 (as amended through
St. 1947, c. 260, § 2). The trustees with the approval of the
Governor and Council appoint an insurance actuary, called
the State actuary, and a physician, called the State medical
director, whose salaries are paid by the Commonwealth.
G. L. (Ter. Ed.) c. 26, §§ 11, 12.

Various provisions of G. L. c. 178 should be noticed. Any
savings bank may establish an insurance department (§ 2),
"in which the business of issuing life insurance and the
granting of annuities is conducted;" and is then known as a
savings and insurance bank (§ 1). As prerequisites such a
bank must establish certain funds (§ 3). After obtaining a
license under § 7, a savings and insurance bank may make

and issue life policies "with all the rights, powers and privileges and subject to all the duties, liabilities and restrictions in respect to the conduct of the business of life insurance conferred or imposed by general laws relating to domestic legal reserve life insurance companies, so far as the same are applicable and except as is otherwise provided herein. The insurance department shall in all respects, except as is otherwise provided herein, be managed as savings banks are managed under general laws relating to savings banks. Such insurance department may decline particular classes of risks or reject any particular application" (§ 6). No bank shall write a policy, with minor exceptions, for more than $5,000 on the life of any one person. The aggregate amount of all such policies in all banks upon any one life shall not exceed a total which would be equal to $1,000 in each savings and insurance bank, exclusive of group insurance, payor insurance, dividends and profits (§ 10, as amended through St. 1958, c. 117). "No policy . . . shall be issued except upon the life . . . of a resident of the commonwealth or of a person regularly employed therein." There are provisions as to the effect of a holder becoming a resident of another State or country (§ 12). Savings and insurance banks may not employ solicitors (§ 13).

The State actuary prepares standard forms for all savings and insurance banks. "He shall also, consistently with the law governing domestic legal reserve life insurance companies, determine and prepare the table of premium rates for all kinds of life insurance policies, . . . the surrender and any proof of death charges, and the premium rates for reinsurance. The rates . . . so fixed shall be adopted as the uniform and exclusive premiums, . . . the surrender, and the proof of death charges. He shall also determine and prepare tables showing the amounts which may be loaned on insurance policies . . . and the guaranty charges to be made by the General Insurance Guaranty Fund, but the loan value shall in no event exceed the reserve on any policy. He shall also prepare or procure tables for computing the legal reserve to be held under insurance . . .

contracts, and for this purpose may, with the approval of the commissioner of insurance, adopt a table of mortality which may be deemed more suitable than the American Experience Table for policies of insurance of the character and amounts to which the risks of the banks are limited; and shall in all other respects, except as otherwise provided, perform the duties of insurance actuary for all the savings and insurance banks and the General Insurance Guaranty Fund'' (§ 15, as amended through St. 1935, c. 330, § 4).

The general provisions concerning life insurance companies are to be found in G. L. c. 175, which relates to many kinds of insurance. The citations which we have made of sections of c. 178 amply demonstrate that the Legislature from the beginning has treated savings and insurance banks as a separate and distinct classification. See 8 Op. Atty. Gen. 544. Fundamentally, they are to be managed under the general laws relating to savings banks. But there are important differences in the field of insurance. Among these are the detailed extent of State participation in the establishment of the General Insurance Guaranty Fund, the appointment of its trustees, the State actuary, and the State medical director. There is a relatively low maximum for which a savings bank policy may be written. The employment of solicitors is forbidden. The intent is that the policyholders are to be residents of the Commonwealth or regularly employed here. The applicable table of mortality may be made more suitable for policies of the character and amounts to which the risks are limited.

In view of the control long exercised and the distinctions long provided in the classification of savings bank life insurance, we are of opinion that the Commonwealth may show its social interest in the welfare of the blind living or regularly employed here, as proposed in the bill, without denying equal protection of the laws in the respect asked in the question. As we have already intimated, it is unsatisfactory to try to answer a question of this sort without adequate factual background. The mere fact that the bill has been filed indicates that there may be some disadvantage in

the minds of writers of insurance as to issuing policies to the blind.  We perceive no reason for imposing any such disadvantage exclusively upon the "wage earners' life insurance," even though any such disadvantage may be offset by appropriate premium adjustments.  On our present inadequate information that is a matter of policy for the Legislature.

Of course, if litigation should follow enactment of the bill, facts may appear that establish the existence of a substantial discrimination against savings and insurance banks as a consequence of the enactment.  In that event, it will be "the duty of the court to consider . . . [the question] anew, unaffected by the" advice now given.  *Opinion of the Justices,* 341 Mass. 738, 748.

If the bill should be enacted in its present form, there is a possible inconsistency with the last sentence of G. L. c. 178, § 6, quoted above.

We answer the question, "Yes."

RAYMOND S. WILKINS
JOHN V. SPALDING
ARTHUR E. WHITTEMORE
R. AMMI CUTTER
PAUL G. KIRK
JACOB J. SPIEGEL
PAUL C. REARDON