Lewis C. BURTON et al.,
Plaintiffs-Appellants,

v.

WHITTIER REGIONAL VOCATIONAL
TECHNICAL SCHOOL DISTRICT et
al., Defendants-Appellees.

No. 78–1211.

United States Court of Appeals,
First Circuit.

Submitted Sept. 7, 1978.
Decided Nov. 20, 1978.

David Berman, Medford, Mass., on brief for appellants.

Robert P. Rudolph and Rudolph & Andrews, Georgetown, Mass., on brief for appellees.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This case comes to us by way of a motion to dismiss granted by the district court. At issue is whether the system of appointment of members of the Whittier Regional Vocational Technical School District (Whittier District) by the local school committees of its constituent municipalities deprives the residents of Haverhill of equal protection of the law and violates the constitutional mandate of "one person—one vote."

Plaintiffs-appellants, residents of the City of Haverhill[1] brought a 1983 civil rights action seeking an injunction prohibiting the Whittier District from continuing to select its governing committee in the manner required by Mass.Stat.1969, ch. 381.

There is and can be no dispute as to the basic operative facts.

The Whittier District is composed of two cities and nine towns. It is governed by a district school committee, which consists of two representatives each from the cities of Haverhill and Newburyport and one representative from each of the nine towns. The total population of the District is 111,433. Haverhill, with 45,643 residents, comprises about 41% of the District's population. The district school committee representatives are appointed by the local school committees of the constituent municipalities who are elected by the residents of the individual cities and towns. The residents of the City of Haverhill voted by a four and one-half to one margin to become a participating member of the Whittier District.

We first consider appellants' equal protection claim which is based on the premise that, since there are some vocational school districts similar to Whittier which statutorily choose their committees by popular vote and others who use a system of proportional representation, the residents of Haverhill are being denied equal protection of the law.[2]

We look first to the enabling legislation. Before a regional school district can be established in Massachusetts, a regional school district planning board must first be created to determine the need for such a district and to study its organization, operation and control. Mass.Gen.Laws ch. 71 §§ 14 and 14A. If the regional planning board recommends the establishment of a regional school district,

it shall submit a proposed agreement or agreements setting forth as to each alternative recommendation, if such be made, the following:—

(a) The number, composition, method of selection, and terms of office of the members of the regional district school committee.

Mass.Gen.Laws ch. 71, § 14B. The recommendation of the regional planning board and the proposed agreement is then submitted for voter approval to each municipality comprising the proposed district. Mass.Gen. Laws ch. 71 § 15. The agreement pertinent here, after being approved by each of the municipalities comprising the Whittier District, was enacted into law. Mass.Stat.1969, ch. 381 § 1.[3] The agreement specifically provided:

---

1. They include the mayor, city council members, school committee members, residents of the City of Haverhill, and the City of Haverhill itself.

2. Although appellees dispute the factual basis of this claim and particularly as to proportional representation in the other districts named by appellants in the complaint, we must, because of the granting of the motion to dismiss accept appellants' allegations as factually supported and take the allegations of the complaint at face value. *California Transport v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1971).

3. Mass.Stat.1969, ch. 381, § 1, in relevant part states:

The cities of Haverhill and Newburyport and the towns of Amesbury, Georgetown, Groveland, Ipswich, Newbury, Rowley, Salisbury and West Newbury are hereby erected and constituted a vocational regional school district pursuant to the provisions of chapter one hundred and fifty-six of the acts of nineteen hundred and sixty-seven and the agreement signed by the members of the regional school district planning board . . . and dated the twenty-sixth day of July, nineteen hundred and sixty-seven.

The member or members of the Committee from each city and town shall be appointed by the local school committee of each respective city or town, and such members may be but need not be members of such local school committee. Section I(A).

It is to be noted that neither the enabling act nor any Massachusetts statute imposes upon regional school districts the method of selecting its school committee. This is left entirely to the voters of each town and city comprising the district. This theme is repeated in the statute authorizing district trustees for independent vocational schools, providing that the trustees shall consist, "either of the chairman and two other members of the school committees of each town, to be appointed by such committees, or of three residents of each, to be elected by the towns." Mass.Gen.Laws ch. 74 § 4.

▪ The Whittier agreement allows for amendment, Section VII, and specifically provides for withdrawal of a member municipality, Section IX. Appellants argue that the withdrawal provisions are illusory because, since the agreement was approved by state statute, it "would probably require an act of the General Court to legalize any cessation of the City of Haverhill from the district." We are not in a position to pass judgment on this assertion, but note that neither the amendment nor withdrawal provisions seem unfair or unduly onerous. Appellants also argue that the requirement that a withdrawing municipality "shall remain liable to the district for its share of the indebtedness of the District outstanding at the time of such withdrawal, and for interest thereon, to the same extent and in the same manner as though the municipality had not withdrawn from the District." Section IX(A), is draconian and deters withdrawal. We find nothing unreasonably harsh in this provision. Indeed, it would seem the only way a district could ensure long-term financing for school construction.

▪ In sum, we are asked by appellants to declare unconstitutional on equal protection grounds a state law that allows municipalities comprising a regional school district to decide how the members of the governing school committee should be selected: by appointment, election or combination of both. In *Sailors v. Board of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), the Supreme Court found nothing unconstitutional in a Michigan statute providing that county school boards be chosen by delegates from the local school boards who had been elected by the voters of each community. The Court stated: "At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here." *Id.* at 111, 87 S.Ct. at 1553.

The residents of Haverhill voted to enter into a regional school district agreement which, among other things, provided for the appointment of its governing committee by its member school boards. The fact that other school districts under Massachusetts law have opted for selecting district committees by election does not deprive the citizens of Haverhill of equal protection of the law.

"[T]he concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." *Reynolds v. Sims,* 377 U.S. 533, 565, 84 S.Ct. 1362, 1383, 12 L.Ed.2d 506 (1964).

As the court below pointed out, a similar argument on equal protection was presented in *Ortiz v. Hernandez Colon,* 385 F.Supp. 111 (D.C.P.R.1974), *vacated and remanded for consideration of mootness,* 429 U.S. 1031, 97 S.Ct. 721, 50 L.Ed.2d 742 (1977), and the court responded: "To argue that voting strength is 'diluted', under equal protection analysis, implies that one group of citizens has more voting power than another group *within the same constituent assembly.*" *Id.* at 114. (emphasis ours). To paraphrase the observation in *Ortiz,* it is no violation of equal protection that residents of other regional school districts may have more direct control over their regional school committees than do residents of the Whittier District. *Id.* at 114.

The law being challenged is not mandatory; it is permissive. It does not discriminate in favor of or against one or a group of regional school districts. If the City of Haverhill now feels that the district agreement puts an unfair burden on it, it can either withdraw or seek help from the Massachusetts Legislature. Clearly, however, there is no equal protection right implicated.

■ The next issue is whether the constitutional requirement of "one person-one vote" has been violated.

Appellants urge that, because the City of Haverhill has 41% of the district's population, but only 15% (2 out of 13) representation on the district committee, the voting rights of its citizens have been infringed. It is clear that on a population basis the City of Haverhill's representation strength on the district committee is diluted in comparison with that of the other municipalities. The question is whether this dilution violates constitutional standards. We think not.

In *Sailors v. Board of Education, supra,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650, the Court upheld as constitutional a Michigan statute providing that delegates from local school boards, not the school electors, select the members of the county school board. The Court held:

> If we assume *arguendo* that where a State provides for an election of a local official or agency—whether administrative legislative, or judicial—the requirements of *Gray v. Sanders,* 372 U.S. 368, [83 S.Ct. 801, 9 L.Ed.2d 821] and *Reynolds v. Sims* must be met, no question of that character is presented. For while there was an election here for the local school board, no constitutional complaint is raised respecting that election. Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of "one man, one vote" has no relevancy.

*Id.* at 111, 87 S.Ct. at 1553.

Appellants try to avoid the impact of *Sailors* on the grounds that the Michigan statute restricted the county school board's power to determine how much the constituent municipalities should contribute to the school district, while, under Massachusetts law, the financing power of the committee is "virtually unlimited and unreviewable." There is no need to analyze the respective state statutes to refute this argument because the Supreme Court in *Sailors, supra,* at 110 n.7, 87 S.Ct. 1549, noted, as appellants concede, that the statutory authority of the county school board included the preparation of an annual budget and levy of taxes. Appellants' state statutory contention is only wishful thinking.

Appellants' position does have some slight substance, however, if it is construed to be that, because of its financing powers, the Whittier School District is a legislative body and that, therefore, *Sailors* does not apply. *Sailors* did explicitly differentiate between local legislative and administrative officials and its holding was limited to nonlegislative officers. "At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive system as was done here." *Id.* at 111, 87 S.Ct. at 1553. The Court cast doubt on the continuing validity of this distinction in *Hadley v. Junior College District,* 397 U.S. 50, 55–56, 90 S.Ct. 791, 795, 25 L.Ed.2d 45 (1970):

> It has also been urged that we distinguish for apportionment purposes between elections for "legislative" officials and those for "administrative" officers. Such a suggestion would leave courts with an equally unmanageable principle since governmental activities "cannot easily be classified in the neat categories favored by civics texts," *Avery v. Midland County, supra,* 390 U.S. 474 at 482, [88 S.Ct. 1114, 20 L.Ed.2d 45] and it must also be rejected.

*Hadley* held that the Missouri apportionment law providing for the election of six trustees of a consolidated junior college district, but limiting the Kansas City School District to 50% of the total number of trustees was unconstitutional because it violated the principle enunciated in *Avery v. Mid-*

*land County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), that a qualified voter in a local election has a constitutional right to have his vote counted with substantially the same weight as that of any other voter in the same geographic area served by the elected officials. The key to *Hadley* is the following language.

> The consistent theme of those decisions [prior election cases] is that the right to vote in an election is protected by the United States Constitution against dilution or debasement. While the particular offices involved in these cases have varied, in each case a constant factor is the decision of the government to have citizens participate individually by ballot in the selection of certain people who carry out government functions.

*Id.* 397 U.S. at 54, 90 S.Ct. at 794.

Here, we do not have a decision, either by the state or the district, to have the people vote for the members of the district committee. The basic theme of *Sailors,* which is directly on point here, was reiterated in *Hadley.*

> We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not "represent" the same number of people does not deny those people equal protection of the laws. *Sailors v. Board of Education,* 387 U.S. 105, [87 S.Ct. 1549, 18 L.Ed.2d 650] (1967); *cf. Fortson v. Morris,* 385 U.S. 231, [87 S.Ct. 446, 17 L.Ed.2d 330] (1966).

*Hadley, supra,* at 58, 90 S.Ct. at 796.

This case is not unlike that of *Rosenthal v. Board of Central High School District No. 3,* 385 F.Supp. 223 (E.D.N.Y.1974), *aff'd* 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975), in which a two-tier system of selecting Board of Education members was held constitutionally sound. In *Rosenthal,* the voters in each of the local school districts elected the members of their own Board of Education. The members of each component board then appointed two of its members to the central board. The plaintiff, as a resident of the most populous component district, contended, as the residents of the City of Haverhill do here, that this was an unconstitutional dilution of his vote. The *Rosenthal* court reviewed *Sailors* and *Hadley* stating:

> The emphasis we put on popular election as the test echoes the Supreme Court's recognition that the crucial factor in the application of Fourteenth Amendment considerations to any apportionment scheme is that the officials whose election is challenged must have been elected by popular vote.

*Id.* at 226.

Haverhill knew when it ratified the Whittier agreement that its representation on the district committee would not be in proportion to its population and that the committee members would be selected by the constituent municipalities, not elected. No voting rights were taken away from the residents of Haverhill, nor was there any violation of the "one person-one vote" constitutional standard.

*The judgment of the district court is affirmed.*