## OPINIONS OF THE JUSTICES.

### OPINIONS OF THE JUSTICES TO THE GOVERNOR.

*Supreme Judicial Court*, Opinions of the Justices. *Taxation*, Sales and use tax. *Constitutional Law*, Taxation, Opinions of the Justices. *Words*, "Commodities."

Discussion of the constitutional limitation on the power and duty of the Justices to render an advisory opinion when the question propounded to them offers no guidance as to the particular constitutional provision a proposed statute might violate. [1204-1205]

The Legislature has the authority to impose an excise upon the sale of certain enumerated services as "commodities" pursuant to the taxing power conferred by Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. [1206-1212] NOLAN, LYNCH, & O'CONNOR, JJ., dissenting.

On July 17, 1990, the Justices submitted the following answers to a question propounded to them by the Governor.

To His Excellency the Governor of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit their response to the question set forth in the Governor's order, dated July 9, 1990, and transmitted to the Justices on that day.

The order indicates that on July 7, 1990, the General Court enacted, and presented to the Governor, House No. 5858, entitled "An Act establishing the economic stability and recovery compact." In his request to us, the Governor states that "grave doubts have been raised concerning the constitutionality of certain provisions of said House 5858 and therefore concerning the authority of the General Court to enact and the Governor to sign into law said House 5858."

After declaring that "it is of critical importance that these questions be answered as soon as possible so as to achieve fiscal stability for the Commonwealth," the Governor states that he requires the Justices' opinions on the following question:

> "Is it permissible under the Massachusetts and United States Constitutions for the Commonwealth to impose an excise upon sales of services as proposed by House 5858?"

The bill (a copy of which has been submitted with the request) is a comprehensive and complex measure that, among other things, provides for the imposition of additional taxes and excises and for the distribution of revenues. We summarize briefly those parts of the bill that relate to the question posed.

The bill makes the sale of certain services subject to the excise that currently is imposed upon the sale of tangible personal property. See G. L. c. 64H, § 2 (1988 ed.). Section 43 of the bill proposes to amend G. L. c. 64H, § 2, to provide in part that "[a]n excise is hereby imposed upon sales at retail in the commonwealth, by any vendor, of tangible personal property or of services performed in the commonwealth at the rate of five percent of the gross receipts of the vendor from all such sales of such property or services, except as otherwise provided in this chapter." In addition, the bill proposes to make the use of certain services in the Commonwealth subject to the excise that is currently imposed only upon the use of tangible personal property in the Commonwealth. See G. L. c. 64I, § 2 (1988 ed.). Section 58 of the bill proposes to amend G. L. c. 64I, § 2, to impose an excise "upon the storage, use or other consumption in the commonwealth of tangible personal property or services purchased from any vendor for storage, use or other consumption within the commonwealth at the rate of five percent of the sales price of the property or services." The "use" of a service, § 57 of the bill declares, would include the "enjoyment of

the benefit of a service, except that it does not include the sale of services in the regular course of business." The bill provides a variety of exclusions and exemptions as to the extended sales and use excises.

In § 42, the bill proposes to define "services" in G. L. c. 64H, § 1, as "a commodity consisting of activities engaged in by a person for another person for a consideration, provided that the term 'services' shall not include activities performed by a person who is not in a regular trade or business offering his services to the public."[1] The definition of the term "services" is further limited, however, to specified "items," including telecommunication services, building services, computer maintenance services, legal services, accounting services, auditing services, engineering services, and architectural services.[2] The definition states that the classifications are taken from the 1987 Standard Industrial

---

[1] The definition also excludes "services rendered to a member of an affiliated group, as defined by section 1504 of the Internal Revenue Code, by another member of the same affiliated group that does not sell to the public the type of service provided to its affiliate."

[2] The complete list of included services, set out in § 42 of the bill, is as follows: "telecommunications services; photographic studios (SIC 7221); commercial photography services (SIC 7335); credit reporting and collection services (SIC 732); commercial art and graphic design services (SIC 7336); building services (SIC 734), not including property used exclusively for residential purposes; computer maintenance and repair services (SIC 7378); detective, guard, armored car services (SIC 7381); security systems services (SIC 7382); other miscellaneous services provided to businesses (SIC 7389), not including auctioneers, notaries public, and advertising services; miscellaneous repair services (SIC 76), provided to businesses; automotive repair services (SIC 753), provided to businesses; surveying services (SIC 8713); flight instruction; piped-in music; landscaping services (SIC 078), excluding those services with a sales price of one hundred dollars or less; court reporting and stenographic services; miscellaneous amusement and recreation services, excluding those amusements and recreation services with a single event sales price of thirty dollars or less (SIC 799); admissions and box rentals to entertainment events, excluding those admissions with a sales price of thirty dollars or less; legal (SIC 81), accounting, auditing and bookkeeping (SIC 872), engineering (SIC 8711), and architectural services (SIC 8712), provided to businesses." For an explanation of the "SIC" codes see note 3, below.

Classification Manual[3] and are intended to include all services listed therein under each category "whether or not the activity represents the primary activity of the vendor." The definition of "services" in § 42 is incorporated in both the sales and use excise provisions of the bill. See House No. 5858, § 57. If House No. 5858 becomes law, the provisions extending the sales and use excises to services will take effect on December 1, 1990. See House No. 5858, § 111.

Our authority and duty to render advisory opinions is restricted to "important questions of law." See art. 85 of the Amendments to the Constitution of the Commonwealth. Justices have construed this language to mean that the question must be specific. See *Answer of the Justices*, 299 Mass. 617, 619-620 (1938). Justices have declined to answer a general question as to the constitutionality of a bill when the question did not state what particular constitutional provision might be violated if the bill were to become law. See *Opinion of the Justices*, 330 Mass. 713, 726-727 (1953). In effect, the question posed by the Governor requests our opinion as to all issues that might arise under the Federal and State Constitutions with regard to the proposed excise upon the sale of services. The question offers no guidance as to any particular constitutional provision that the imposition of the excise might violate. When confronted with comparably broad questions, the Justices have requested to be excused from responding. See *Opinion of the Justices*, 386 Mass. 1201, 1221-1222 (1982); *Opinion of the Justices*, 333 Mass. 783, 790-791 (1955).

---

[3]The manual was prepared by the Office of Management and Budget (OMB) of the Executive Office of the President. The Director of OMB writes in the preface to the manual that "[t]he classification covers the entire field of economic activities and defines industries in accordance with the composition and structure of the economy." He explains that the "Standard Industrial Classification (SIC) is the statistical classification standard underlying all establishment-based Federal economic statistics classified by industry." The categories that appear in the definition of "services" in House No. 5858 comprise a small but substantial part of the list of services in the manual.

Mindful of this constitutional limitation on our power and duty to render advisory opinions, we restrict our response to the important, broad issue, clearly implicit in the Governor's question, whether the General Court has the authority to impose an excise upon the sale of services enumerated in House No. 5858 as "commodities" pursuant to the taxing power conferred by Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. Cf. *Opinion of the Justices*, 349 Mass. 794, 801 (1965); *Opinion of the Justices*, 275 Mass. 580, 582 (1931). We give no answer under the Constitution of the United States.

We recognize that there are other constitutional questions that have been or might be raised concerning the imposition of an excise upon the sale of particular services included within the definition of services in House No. 5858.[4] Time alone would prevent us from providing satisfactory answers to these questions. The proper answers to some such questions appear to depend on the facts of particular circumstances, and thus such questions do not lend themselves to comprehensive treatment in an advisory opinion. In any event, we read and treat the question as one directed solely to the Legislature's authority generally to impose an excise upon the sale of services as defined in House No. 5858. What we say concerning the constitutionality of imposing an excise upon the sale of services will have application to the unasked question of the constitutionality of imposing an excise upon the use of services. We shall not discuss, however, any constitutional issue peculiarly applicable to the imposition or collection of the excise upon the use of services.

---

[4]Among the arguments raised in briefs filed by various amici curiae who assert that House No. 5858 is unconstitutional, in one way or another, are the following: House No. 5858 lacks a rational basis and is unreasonable in distinguishing taxable from nontaxable services; it violates the separation of powers provision of art. 30 of the Declaration of Rights in imposing an excise on legal services; it violates equal protection and due process provisions of the Massachusetts and Federal Constitutions; it is unconstitutionally vague; it violates the commerce clause as applied to telecommunications services; and it violates the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States as applied to legal services.

The General Court has the power "to impose and levy, reasonable duties and excises, upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the" Commonwealth. Part II, c. 1, § 1, art. 4, Constitution of the Commonwealth. Today, common usage of the words "produce, goods, wares, merchandise, and commodities" includes few, if any, of the services enumerated in § 42 of House No. 5858, inserting a definition of "services" in G. L. c. 64H, § 1. The crucial word in Part II, c. 1, § 1, art. 4, for present purposes is "commodities." It is clear from our cases that the word "commodities" has a far broader meaning in the context of art. 4 than it has in common usage today.

This court's earliest discussion of the meaning of the word "commodities" in Part II, c. 1, § 1, art. 4, was in 1815 when Chief Justice Parker wrote that commodities "will perhaps embrace every thing, which may be a subject of taxation, and has been applied by our legislature, from the earliest practice under the Constitution, to the privilege of using particular branches of business or employment, as, the business of an auctioneer, of an attorney, of a tavern-keeper, of a retailer of spirituous liquors, &c." *Portland Bank* v. *Apthorp*, 12 Mass. 252, 256 (1815). Early in this century, however, the court questioned the breadth of that quoted language and adopted a more limited meaning of the word "commodities." *O'Keeffe* v. *Somerville*, 190 Mass. 110, 111-113 (1906). On the other hand, in 1908 three Justices of this court reverted to the broader meaning of the word expressed by Chief Justice Parker in 1815. See *Opinion of the Justices*, 196 Mass. 603, 621 (1908).

In 1933, the Justices, referring to the Legislature's power to impose an excise on commodities, noted that "[t]he word 'commodities' in this connection may have a broader significance than the other words used in conjunction with it, although in common speech it frequently is used in a sense nearly if not quite identical with them." *Opinion of the Justices*, 282 Mass. 619, 623 (1933) (advising that an excise on the sale of tangible personal property, based on a reasonable

percentage of the sale price, would be constitutional under Part II, c. 1, § 1, art. 4). For example, it had long been acknowledged that a corporation's franchise was a commodity on which the Legislature could impose an excise. See *Commonwealth* v. *Hamilton Mfg. Co.*, 12 Allen 298, 306 (1866); *Minot* v. *Winthrop*, 162 Mass. 113, 120 (1894), and cases cited. Also, the privilege of transferring property on death had been recognized as a commodity under art. 4. *Minot* v. *Winthrop, supra* at 122.

The word "commodities" has had uneven judicial treatment. "The interpretation of that word has been discussed several times and has been found to involve difficulties." *Opinion of the Justices*, 282 Mass. at 623. In *Gleason* v. *Mc-Kay*, 134 Mass. 419, 425 (1883), the court held that no aspect of a partnership with transferrable shares was a commodity, "any more than . . . any other agreement, right or mode of transacting any business, can be called a commodity, and so liable to taxation at the will of the Legislature." See *Opinion of the Justices*, 266 Mass. 590, 594-595 (1929). The court in *Gleason* v. *McKay, supra*, distinguished a partnership, which had no franchise or special privilege conferred by the State, from a corporation. The court went on to speak about the adverse consequences of a contrary ruling: "If this tax can be upheld, it seems to us that the necessary result will be that the Legislature has the power to select any business, occupation or calling carried on, or any natural right enjoyed, under the protection of our laws, and impose upon it at its will a special tax or excise. This would be extending the meaning of the word 'commodities' beyond any reasonable limits. Its effect would be to break down the limitations which the Constitution intended to impose upon the power of the Legislature, for the purpose of securing the end that all sums necessary for the defence and support of the government should as far as practicable be raised by the equal taxation of the people." *Id.* at 425-426.

In *Minot* v. *Winthrop*, 162 Mass. 113 (1894), where the court held that an owner's privilege of passing property on death was a commodity within the meaning of Part II, c. 1,

§ 1, art. 4, and properly subject to an excise, the court expanded on the reasoning of *Gleason* v. *McKay*, stating: "The language of the Constitution of Massachusetts is general, and may well be held to authorize the laying of excises upon all such gainful employments and privileges as are created *or may be regulated by law*, and commonly have been considered legitimate subjects of taxation in other States and countries" (emphasis supplied). *Id.* at 122. In sole dissent among the seven Justices, Justice Lathrop relied heavily on the language just quoted from *Gleason* v. *McKay, supra,* to conclude that the privilege of passing property at death was not a commodity under art. 4. *Id.* at 127, 128-129.

In 1908, the Justices held divergent views of the fundamental premises of the holding in *Gleason* v. *McKay, supra.* See *Opinion of the Justices,* 196 Mass. 603 (1908). Three Justices (Hammond, Loring, and Sheldon), in light of language in *Minot* v. *Winthrop,* 162 Mass. 113 (1894), did not read the opinion in *Gleason* v. *McKay,* as barring the imposition of an excise on a privilege not granted by legislation, but which was the exercise of a natural right. *Id.* at 614-618. After an exhaustive review of the system of taxation in use prior to 1780 when the constitutional language was adopted (*id.* at 607-613), and relying on the opinion in *Portland Bank* v. *Apthorp,* 12 Mass. 252, 256 (1815), these three Justices concluded: "There is nothing in the terms of the clause now in question [Part II, c. 1, § 1, art. 4], nor in the circumstances under which it was passed, which limits the power of imposing and levying imposts and excises, except that they must be reasonable. On the contrary, having regard to the circumstances under which this clause was adopted and the words in which the clause was put by the Convention, we are of opinion that the intention of the Convention was to give to the General Court of the Commonwealth, under the Constitution, the same power of imposing and levying imposts and excises which had been theretofore practised in England and in the Province. And we are further of opinion that the power of the General Court in imposing and levying an excise duty is not less extensive than that of Congress . . . ." *Id.*

at 617-618. Justice Rugg concluded separately that an excise imposed on the transfer of shares of an unincorporated association would be proper because the method of transfer of property came "within the familiar definitions of 'commodity'" given in earlier opinions. *Id.* at 621. The three other Justices (Chief Justice Knowlton, Morton, and Braley) agreed that an excise imposed on the transfer of the shares of a corporation was a lawful excise on a commodity (*id.* at 623), but concluded that such an excise imposed on the transfer of shares of voluntary associations doing business without any needed grant of legislative authority would not be an excise on a commodity. *Id.* at 627.

One line of authority has limited the word "commodities" to transactions by entities or persons that either are or could be regulated in the public interest, thus excluding from "commodities" the exercise of a "natural right." See *Opinion of the Justices*, 196 Mass. 603, 623-627 (1908) (Knowlton, C.J., Morton, and Braley, JJ.); *O'Keeffe* v. *Somerville*, 190 Mass. 110, 112-113 (1906); *Minot* v. *Winthrop*, *supra* at 122; *Gleason* v. *McKay*, *supra* at 425. See also P. Nichols, Taxation in Massachusetts 120-121 (3d ed. 1938). This seems to be the only clearly expressed principle that has limited the scope of the word "commodities." The lawful authority of government to regulate commercial and business enterprises and activities has, however, greatly expanded since the last significant discussion in the Massachusetts Reports of the meaning of the word "commodities." A consequence of that expansion is the diminution of the range of "natural rights" free from intrusion. Without stating a firm view as to every activity defined as a service in House No. 5858, we conclude that such activities could be, and many in fact are, regulated in significant respects by the Commonwealth, acting through the Legislature or through the judiciary (as to attorneys). Thus, in deciding what is a "commodity" under Part II, c. 1, § 1, art. 4, the factual basis for this distinction between regulated or regulatable activities that could be subject to an excise and unregulated activities ("natural rights") that could not, has largely, if not entirely,

disappeared. If the only limitation on treating a service as a commodity is that the government must be able to regulate the activity, or a person or entity engaged in that activity, there is no substantial present-day limitation on the treatment of the services enumerated in House No. 5858 as commodities.

The question whether the word "commodities" in Part II, c. 1, § 1, art. 4, includes the sale of commercial, business, and professional services has never been addressed by the Supreme Judicial Court. We know that the scope of the word "commodities" is not limited to the sale of tangible property because it includes, for example, the privilege of transferring property on death and the act of transferring shares in a business enterprise. See *Minot* v. *Winthrop*, *supra* at 121-122. It is significant for our present purposes that these taxable commodities are intangible.

A major focus of judicial discussion on the word "commodities" in Part II, c. 1, § 1, art. 4, has been on the question whether the activity subject to an attempted excise is regulated by the State or involves a privilege or benefit conferred by the State. In *Minot* v. *Winthrop*, *supra*, the court indicated that a commodity includes an activity that could be regulated by the Commonwealth, even if it is not in fact regulated. 162 Mass. at 122. For the purpose of deciding what is or is not a commodity, we see no meaningful distinction between an activity that may be regulated by the State and is not and one that is lawfully regulated.

There is arguably a different and broader view, the one expressed by Chief Justice Parker in 1815 (see *Portland Bank* v. *Apthorp*, 12 Mass. 252, 256 [1815]), and adhered to by three Justices in 1908 (see *Opinion of the Justices*, 196 Mass. 603, 614-618 [1908]). That view appears to recognize a wide power under Part II, c. 1, § 1, art. 4, to impose an excise, as long as it is reasonable, to the same degree Congress might lawfully do. *Id.* at 618. It may be, however, that in *Portland Bank* v. *Apthorp*, *supra*, Chief Justice Parker was discussing license or franchise fees and did not intend excises on the sale of services to be covered by his broad lan-

guage. If so, his view is not significantly different from the view that the exercise of "natural rights" cannot be a commodity under Part II, c. 1, § 1, art. 4. See *Minot* v. *Winthrop*, 162 Mass. 113, 119-120 (1894); *Commonwealth* v. *Lancaster Savs. Bank*, 123 Mass. 493, 495 (1878). The opinion in *Portland Bank* v. *Apthorp, supra*, itself acknowledges a bar on the imposition of an excise on the "natural right" to carry on employment in contradistinction to the imposition of a franchise or license fee as an excise on a commodity.

In deciding whether an excise constitutionally may be imposed upon the sale of services enumerated in House No. 5858, we need not resolve the question whether there have been two significantly different past points of view on the scope of the word "commodities." That is so because even under the theory that an excise may constitutionally be imposed on an activity only if the activity is regulated or lawfully subject to regulation, the activities enumerated in House No. 5858 are commodities. As we have said, the kinds of commercial, business, and professional activities that government may constitutionally regulate have greatly expanded in the past eighty years. Thus, the services and the sale of services enumerated in House No. 5858 are subject to being regulated, and a number of them in fact are. In commercial, business, and professional activities, the range of what were once called "natural rights," free from intrusion by the State, has diminished greatly, if not disappeared.

Once it is appreciated that the word "commodities" in Part II, c. 1, § 1, art. 4, is not limited to tangible personal property, but includes those benefits, privileges, and activities that may be regulated by the Commonwealth, an excise upon the sale of services, as enumerated in House No. 5858, falls within the Legislature's authority under Part II, c. 1, § 1, art. 4, provided, of course, it is reasonable and is not a property or income tax masquerading as an excise. Subject to the caveat that one or more of the specific services enumerated in House No. 5858 might not qualify, we conclude that the excise upon the sale of services enumerated in House No. 5858 is authorized under Part II, c. 1, § 1, art. 4, of the Constitu-

tion of the Commonwealth. In stating this general conclusion, we imply no view on special constitutionally-based problems that may exist with respect to the imposition of an excise upon the use of services or upon the sale of any particular service enumerated in § 42 of House No. 5858.

We, therefore, answer the Governor's question in the affirmative, subject to the limitations we have stated on the scope of our answer.

The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the seventeenth day of July, 1990.

PAUL J. LIACOS
HERBERT P. WILKINS
RUTH I. ABRAMS
JOHN M. GREANEY

The undersigned Justices are of opinion that the Legislature has no power to impose an excise on the sale of services as authorized by House No. 5858. Thus, the undersigned Justices conclude that the answer to the Governor's question should be, "No."

The Supreme Judicial Court and various Justices of the court have often struggled with the breadth of the term "commodities" as used in Part II, c. 1, § 1, art. 4. While the term "commodities" clearly extends the legislative taxing power beyond the power to tax produce, goods, wares, and merchandise, it has never been extended to include the sale of commercial, business, and professional services.

Historically, the question what are "commodities" under our Constitution has arisen in cases involving matters which do not fall within the language preceding that term. In those cases, the term "commodities" has been applied to "privileges" uniquely promoted by the government, or "franchises" conferred by the government. See *Minot* v. *Winthrop*, 162 Mass. 113 (1894). See, e.g., *Gleason* v. *McKay*, 134 Mass.

419, 425 (1883); *O'Keeffe* v. *Somerville*, 190 Mass. 110, 113 (1906). From these decisions, our colleagues arrive at the conclusion that any activity which can be regulated by the State is a commodity. This conclusion is faulty. It leaves the constitutional provision limiting the power to impose excise taxes virtually without meaning since almost any activity is subject to regulation by the State in one form or another. Indeed, the holdings in *Gleason, O'Keeffe*, and *Minot* are persuasive in support of our position, since they focus on the requirement of a governmental grant or privilege.

An intangible thing is *not* a commodity except in the rare instance where either it owes its very existence to the grace of the Legislature or is uniquely promoted by the Legislature, as in the transmission of property at death. This is very different from merely being regulated by the Legislature. Thus, in *O'Keeffe*, the court noted that, "under the limitation to commodities, [the Legislature] cannot levy an excise tax upon the business of a husbandman or an ordinary mechanic." 190 Mass. at 113. And in *Gleason*, the court recognized that, to allow the "Legislature . . . to select any business, occupation or calling carried on, or any natural right . . . and impose upon it at its will a special tax or excise . . . would be extending the meaning of the word 'commodities' beyond any reasonable limits." 134 Mass. at 425-426.

Nothing but the most strained interpretation of "commodities" can include the host of services in House No. 5858. House No. 5858 attempts to place an excise on the transfer of labor, thoughts, and ideas. It seeks to tax the skills utilized in a broad array of employments. Whether regulated by the government or not, these are not things which owe their very existence to the State. They do not fall within the ordinary meaning of "commodities" which encompasses items and goods of commerce. In short, there is no constitutional authority to levy a tax on services as proposed by House No. 5858.

The plain language of our Constitution limits the Legislature's power to levy taxes. The language does not encompass a tax on services or labor. Tangible goods are inherently dif-

ferent from services and labor. Intangible things created by the State and granted to persons are different from services and labor. The opinion of our colleagues ignores these differences and includes everything subject to regulation within the term "commodities." This virtually reads Part II, c. 1, § 1, art. 4, out of the Massachusetts Constitution, because it leaves almost everything subject to taxation. This result was clearly not the intent of the framers of the Constitution. We think that, if the framers of the Massachusetts Constitution had intended "services" to be taxable, as are "produce, goods, wares, merchandise," then Part II, c. 1, § 1, art. 4, would have granted the Legislature the power "to impose and levy, reasonable duties and excises, upon any produce, goods, wares, merchandise, [*services*], and commodities."

Accordingly, we would answer the question, "No."

The foregoing answer is submitted by the Justices subscribing hereto on the seventeenth day of July, 1990.

JOSEPH RICHARD NOLAN
NEIL LAWRENCE LYNCH   ·
FRANCIS PATRICK O'CONNOR