439 Mass. 111 (2003)                                                     111

Route One Liquors, Inc. v. Secretary of Administration and Finance.

ROUTE ONE LIQUORS, INC., & others[1] vs. SECRETARY OF
ADMINISTRATION AND FINANCE.

Norfolk. February 3, 2003. - April 3, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Summary judgment. *Taxation,* Excise, Parking lot. *Constitutional Law,* Taxation, Severability, Taking of property, Legislation favoring individual, Equal protection of laws, Special law, General law, Contract clause. *License. Due Process of Law,* Taxation.

This court concluded that a license to operate an open-air commercial parking lot near a certain sports stadium was a commodity within the meaning of Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth, on which an excise tax could be imposed, because such a license was a privilege regulated by the Legislature. [116-117]
An excise tax authorized by St. 1999, c. 16, §§ 2(*b*), 7(*b*)(2), as amended by St. 2000, c. 72, § 4, on the privilege of holding a license to operate an open-air commercial parking lot within three miles of a certain sports stadium was not unreasonable and unequal in violation of Part II, c. 1, art. 4, of the Constitution of the Commonwealth, where the tax was not based on false and unjust principles, and the amount of the excise was not proved to be grossly oppressive or disproportionate to the benefit of having a license to provide open-air parking within close proximity to the stadium; and where the Legislature rationally could have concluded that the value of the license to operate the open-air parking lot closer to the stadium was greater than the value of operating such a business farther away. [117-119]
This court declined to decide whether St. 1999, c. 16, §§ 2(*b*), 7(*b*)(2), as amended by St. 2000, c. 72, § 4 (act), authorized public funds for private purposes in violation of art. 62 of the Amendments to the Massachusetts Constitution, by providing public funds for an access road to a certain sports stadium, where the excise tax provided by the act on the privilege of holding a license to operate an open-air commercial parking lot within three miles of the stadium could be upheld independent of the constitutional validity of the access road under the doctrine of severability. [119]

[1] 16 Washington Street, LLC, doing business as Honey Dew Donuts; D & N Corp., Inc.; Garard Motel; Frank Federico, trustee of the Foxboro Realty Trust; Gregory P. Spier, trustee of the Pinebrook Office Park Condominium Association; William O'Brien, doing business as The Country Store; Antonio J. Lorusso, Jr., trustee of the Lorusso Family Trust; Wedgestone Financial; The Sturdy Memorial Foundation, Inc.; Richard Holmes, general partner of the Holmes Park Limited Partnership; Calvin Kritzman, trustee of the F.K. Realty Trust; Auto East, Inc.; The BRH Park, LLC; Robelle Industries, Inc.; Jay Hanflig; Edna Weiss; and the Red Fox Partnership.

An excise tax authorized by St. 1999, c. 16, §§ 2(*b*), 7(*b*)(2), as amended by St. 2000, c. 72, § 4, on the privilege of holding a license to operate an open-air commercial parking lot within three miles of a certain sports stadium did not constitute a taking without just compensation in violation of the Fifth Amendment to the Massachusetts Constitution, where there was no indication that the excise tax denied all economically beneficial or productive use of the property in question, or that the parking lot operators could not pass on the amount of the excise tax to their customers; and where it could not be said that the excise tax was not undertaken in further-ance of a valid public purpose. [120]

Statute 1999, c. 16, §§ 2(*b*), 7(*b*)(2), as amended by St. 2000, c. 72, § 4 (act), authorizing an excise tax on the privilege of holding a license to operate an open-air commercial parking lot within three miles of a certain sports stadium, did not deny the operators of the affected parking lots (plaintiffs) equal protection under the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights, where the plaintiffs failed to prove that the distinction between parking lot opera-tors based on their proximity to the stadium violated the equal protection clauses of the Federal and State Constitutions; further, the act did not violate provisions unique to art. 10, where the plaintiffs failed to show that the legitimate public purposes of the act were outweighed by any benefits conferred on a private party, and where the act did not suspend the opera-tion of a general law in favor of an individual. [120-122]

Statute 1999, c. 16, §§ 2(*b*), 7(*b*)(2), as amended by St. 2000, c. 72, § 4, authorizing an excise tax on the privilege of holding a license to operate an open-air commercial parking lot within three miles of a certain sports stadium, did not interfere with the rights of the affected parking lot opera-tors to engage in any lawful occupation, in violation of the due process clauses of the State and Federal Constitutions [122-123]; nor did the tax substantially impair any enforceable contracts between the affected parking lot owners and the town licensing authority in violation of the contracts clause of the United States Constitution [123]

CIVIL ACTION commenced in the Superior Court Department on April 17, 2001.

The case was heard by *Robert A. Mulligan*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward J. McCormick, III* (*Elizabeth J. Maitland* with him) for the plaintiffs.

*Thomas A. Barnico*, Assistant Attorney General (*James A. Sweeney*, Assistant Attorney General, with him) for the defendant.

IRELAND, J. The plaintiffs, eighteen parking lot operators and

owners, brought this action against the Secretary of Administration and Finance (Secretary), seeking a declaratory judgment that St. 1999, c. 16, as amended by St. 2000, c. 72, §§ 4-6, "An Act relative to the construction and financing of infrastructure and other improvements in the town of Foxborough and at Foxboro Stadium" (Act), is unconstitutional under numerous provisions of the State and Federal Constitutions. The Act, inter alia, imposes an aggregate annual fee of $400,000 on commercial operators licensed to provide parking within a three-mile radius of Foxboro Stadium (stadium). St. 1999, c. 16, §§ 2 (*b*), 7 (*b*) (2), as amended by St. 2000, c. 72, § 4. For purposes of this litigation, it is undisputed that this fee is an excise tax. The plaintiffs' position boils down to the following contentions: (1) a license to operate an open-air parking lot is not a commodity on which an excise tax can be imposed; (2) the excise tax is unreasonable and unequal in violation of Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth; (3) the Act provides public funds for private purposes in violation of art. 62 of the Amendments to the Massachusetts Constitution; (4) the excise tax constitutes a taking without just compensation in violation of the Fifth Amendment to the United States Constitution; (5) the excise tax violates the equal protection provision of art. 10 of the Massachusetts Declaration of Rights and the Fifth and Fourteenth Amendments to the United States Constitution; (6) the excise tax violates the due process provision of art. 10 and the Fifth and Fourteenth Amendments; and (7) the Act violates the contracts clause of the United States Constitution. After a hearing on the parties' cross motions for summary judgment, a Superior Court judge granted summary judgment in favor of the Secretary and denied the plaintiffs' motion for summary judgment. We granted the plaintiffs' application for direct appellate review. Because the Legislature could have reasonably determined that the $400,000 aggregate annual fee would amount to five dollars a space for each home football game, see *infra*, we conclude that the excise tax is reasonable. Because we conclude that the Act satisfies the requirements of the State and Federal Constitutions, we affirm the judgment of the Superior Court.

A. *Facts.* There are no material facts in dispute.[2] In May, 1999, the Massachusetts Legislature approved the Act for the purpose of "provid[ing] forthwith for the construction and financing of certain infrastructure and other improvements in the town of Foxborough at Foxboro stadium." St. 1999, c. 16, emergency preamble. The Act states that the construction of a new stadium "will significantly enhance the economic development and the general welfare of the commonwealth . . . [and] enhance employment opportunities for its citizens." *Id.* at § 1.

Among other things, the Act creates a "parking and traffic management zone," which is defined as "the area within the towns of Foxborough, Sharon, Walpole and Wrentham within a three mile radius of the center of the stadium . . . which shall include all parking spaces licensed by the town of Foxborough for stadium related events." St. 1999, c. 16, § 2. The Act provides that an annual aggregate amount of $400,000 shall be collected from those who are licensed to operate open-air parking lots within the parking and traffic management zone for stadium events. *Id.* at § 7 (*b*) (2), as amended by St. 2000, c. 72, § 4. The Secretary conceded, for purposes of this litigation, that this fee is an excise tax. Pursuant to the Act, the fees will be collected by the appropriate town, "and returned to the commonwealth for deposit in the general fund." *Id.* The Act does not detail how the tax will be allocated among the licensees, but provides that the Secretary "shall adopt procedures and guidelines for the determination, assessment and collection of such fees consistent with this act." *Id.*

General Laws c. 148, § 56, authorizes municipalities to regulate the operation of open-air parking lots by issuing licenses that indicate the premises to be used for such businesses, the "total area of the space therein to be actually used for parking or storing vehicles, and the maximum number of vehicles to be parked or stored in such area." Since 1971, the town of Foxborough (town) has issued licenses for persons to

---

[2]Although the plaintiffs' application for direct appellate review stated that there were genuine issues of material fact in dispute, they did not identify any particular facts in dispute, and did not pursue this argument in their brief. The docket indicates that the plaintiffs filed three motions that have not been disposed of in the Superior Court. Neither party addressed this lack of disposition, and our opinion is not affected by it.

operate commercial parking lots within the vicinity of the stadium, pursuant to G. L. c. 148, § 56. Licenses are issued annually at a rate of six dollars a space. The excise tax imposed by the Act will be in addition to such sums charged by the municipality. The license allows parking lot operators to choose how much to charge for parking, as well as for which events, if any, to open.

The Act additionally provides that the new stadium will "require[] the acquisition, construction, development, modernization and improvement of substantial support facilities to the stadium, including roadways, pedestrian walkways and bridges, lighting and other utilities, water, wastewater and solid waste management facilities and similar improvements . . . [to] promote and enhance public safety and convenience." St. 1999, c. 16, § 1. To fund such infrastructure projects, the Act authorizes the town to issue up to $70 million in bonds. *Id.* at §§ 4, 7 (*a*). The Act provides that the Commonwealth will "provide contract assistance for debt service obligations of the town . . . in amounts sufficient to defray debt service costs associated with" bonds issued pursuant to the Act. *Id.* at § 8, as amended by St. 2000, c. 72, § 6.

B. *Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.,* 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 556 (1976). Because we conclude that the motion judge's rulings were correct as a matter of law, we affirm the judgment of the Superior Court.

The plaintiffs make numerous challenges to the Act under the State and Federal Constitutions, which we will address in turn. However, "[w]e note at the outset that when a challenge is made to the constitutionality of a legislative enactment, the person making the challenge has an onerous burden of proof in

establishing the invalidity of the statute." *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 541 (1974), and cases cited.

1. As a preliminary matter, we must address whether a license to operate a commercial open-air parking lot is a "commodity," on which an excise tax can be levied.[3] The Legislature has "full power and authority . . . to impose and levy, reasonable duties and excises, upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the same." Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. "The term 'commodities' encompasses 'convenience, privilege, profit, and gains.' " *Emerson College* v. *Boston*, 391 Mass. 415, 427 (1984), quoting *Minot* v. *Winthrop*, 162 Mass. 113, 120 (1894). Although the scope of the term "commodities" has not been definitively established, *Opinions of the Justices*, 408 Mass. 1201, 1207 (1990), it is a "clearly expressed principle" that "transactions by entities or persons that either are or could be regulated in the public interest" are commodities. *Id.* at 1209, and cases cited.

We reject the plaintiffs' argument that they have a "natural right" to use their property for open-air parking in conjunction with events at the stadium, and that there is insufficient government regulation to render the license a commodity. A person cannot operate an open-air parking lot without a license from the appropriate municipality. See G. L. c. 148, § 56 ("no person shall engage in the business of conducting or maintaining an open-air parking space without a license therefor granted" by city or town). The penalty for conducting such business without a license is a fine of not more than $300. *Id.* This privilege of being able to use one's property for commercial open-air parking was first granted by the Legislature in 1930. St. 1930, c. 399, § 1. The town has issued licenses for commercial parking lots in the vicinity of the stadium since 1971. Thus, a license to operate a commercial parking lot near the stadium is a commodity within the meaning of the State Constitution because it

---

[3]Because the excise tax is imposed on those operators who are licensed by the town to park cars commercially, it is clear that the tax is on *the license* to conduct such business, and not, as the plaintiffs contend, on "the right to park cars on one's own property."

is a privilege regulated by the Legislature. Moreover, parking lot operators are under no requirement to operate commercial parking lots and are free to choose whether to apply for a license each year. "It is well-established . . . that the obligation to pay an excise tax 'is based upon the voluntary act of the person taxed in . . . enjoying the privilege . . . which is the subject of the excise.' " *Emerson College* v. *Boston, supra* at 428, quoting P. Nichols, Taxation in Massachusetts 16 (3d ed. 1938).

2. We now address the plaintiffs' numerous arguments that the excise tax is unreasonable and unequal in violation of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. "The power of the State to impose excises on business corporations is very broad, the sole State constitutional limitation being that the excise levied be 'reasonable.' " *Opinion of the Justices*, 393 Mass. 1209, 1217 (1984), citing *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, 384 Mass. 607, 612 (1981).

> " 'The [constitutional] limitation that an excise be "reasonable" was not intended to give to the judiciary the right to revise decisions of the Legislature that might be thought unwise or inexpedient.' *Andover Sav. Bank* v. *Commissioner of Revenue*, [387 Mass. 229,] 235 [(1982)]. To be considered reasonable, excises 'cannot be unjustly discriminatory, arbitrary, whimsical or irrational. They cannot be plainly unequal, grossly oppressive or contrary to common right.' *American Uniform Co.* v. *Commonwealth*, 237 Mass. 42, 45 (1921). In addition, the excise tax must not be based on false and unjust principles, and must show 'a proper proportion between the benefits received and the sum paid for the enjoyment of them.' "

*Shea* v. *Boston Edison Co.*, 431 Mass. 251, 260-261 (2000), quoting *Andover Sav. Bank* v. *Commissioner of Revenue, supra.* The plaintiffs argue that the Act is unreasonable because it is based on false and unjust principles, grossly oppressive, disproportionate, and plainly unequal. We disagree.

The excise tax on the privilege of holding a license to operate a commercial parking lot within three miles of the stadium is reasonable. "[I]n a facial challenge such as this, if the statute allows the setting of guidelines that may reasonably be applied in ways that do not violate constitutional safeguards, then we

must indulge that presumption and find that the . . . provisions escape a facial constitutional challenge." *Opinion of the Justices*, 423 Mass. 1201, 1218 (1996). Because we "grant all rational presumptions in favor of the constitutionality of a legislative enactment," the positing of theoretically possible unreasonable scenarios[4] are insufficient to make the Act unreasonable. *Kienzler* v. *Dalkon Shield Claimants Trust*, 426 Mass. 87, 89 (1997). The judge correctly reasoned that the Legislature could have based the amount of the tax on the product of 8,000 spaces and ten home football games.[5] Under this formulation, the excise tax amounts to five dollars a parking space for each game,[6] or fifty dollars a space annually. Because the Legislature could have reasonably determined the amount of the excise tax based on the above analysis, the plaintiffs have not proved that the tax is based on "false and unjust principles." Likewise, the plaintiffs have failed to prove that the amount of the excise is "grossly oppressive,"

---

[4]The plaintiffs contend that the Act is unreasonable because it does not reveal the basis for the amount of the tax (e.g., number of parking spaces, games, or licenses expected); it does not include a formula or method for determining the tax per licensee; it is based on the fact that the parking lot operator has a license to park cars and not on the number of cars actually parked; there is nothing to prevent the entire $400,000 from being assessed on a single licensee; it does not contain an "explicit and precise proportion"; and the Act does not cap the maximum liability for an individual licensee. The Act leaves it to the Secretary to devise procedures for assessing the tax. St. 1999, c. 16, § 7 (*b*) (2), as amended by St. 2000, c. 72, § 4. In the event that the Secretary's method for allocation and assessment ultimately results in the imposition of an arbitrary or unreasonable tax on any parking lot operator, the operator may challenge such a tax. Here, however, we are presented with a facial challenge to the Act's provisions concerning the tax in the aggregate, not with an as applied challenge to the Secretary's method of allocating and computing the tax for any particular operator.

[5]The record indicates that from July 1, 1999, to June 30, 2000, the town licensed 8,359 spaces to various entities in the vicinity of the Stadium, and that the New England Patriots generally play between eight and twelve home games a year. While it is true that the precise number of licensed spaces and number of home games in future years are unknown, the plaintiffs failed to prove that it is unreasonable for the Legislature to base the tax on such facts.

[6]The Secretary alleges that in recent years there have been between twenty and twenty-five events in addition to the New England Patriots football games each year. The plaintiffs dispute that any such additional events are licensed for "capacity crowds." Nevertheless, we note that to the extent that there are additional stadium-related events, it would further reduce the amount of the excise per event.

or disproportionate to the benefit of having a license to provide open-air parking within close proximity to the stadium.

We also reject the plaintiffs' contention that the excise tax treats parking lot operators unequally and is therefore unreasonable. The Legislature rationally could have concluded that the value of a license to operate an open-air parking lot closer to the stadium is greater than the value of operating such a business farther away. Therefore, it is reasonable to impose an excise tax only on those open-air parking lots that operate within three miles of the stadium.

3. The plaintiffs contend that the Act authorizes public funds to be expended for an access road to the stadium, in violation of art. 62, § 1, of the Amendments to the Massachusetts Constitution, as amended by art. 84 of the Amendments.[7] In particular, the plaintiffs allege that the access road is not open to the public, and can only be used by "individuals who have purchased a corporate box or other luxury or preferred seating at the stadium." We need not decide this question because we can uphold the excise tax independent of the constitutional validity of the access road, under the doctrine of severability. See *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Commonwealth*, 414 Mass. 411, 420 (1993) (severability appropriate when items "are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part"). The Act authorizes the town to issue bonds for numerous other infrastructure projects, none of which the plaintiffs challenged. See St. 1999, c. 16, § 4. Thus, even if it were impermissible to provide contract assistance for bonds issued by the town in conjunction with the access road, the plaintiffs have not proved that the Legislature would not have intended that the town issue bonds for the other infrastructure projects, that the State appropriate contract assistance to help pay debt service on those bonds, and that the excise tax should take effect.

---

[7] "The credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed." Art. 62, § 1, of the Amendments to the Massachusetts Constitution, as amended by art. 84 of the Amendments.

4. We reject the plaintiffs' allegation that the excise tax constitutes a taking of property in violation of the United States Constitution.[8] Contrary to the plaintiffs' contention, there is nothing in the record to indicate that the excise tax "denies all economically beneficial or productive use of [the plaintiffs'] land." *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1015, 1018 (1992) (ordinance "requiring land to be left substantially in its natural state" precluded all development, and denied all "economically beneficial or productive options" for land). Furthermore, there is nothing in the record that indicates that the parking lot operators could not pass on the amount of the excise tax to their customers. The plaintiffs have failed to distinguish their situation from the case of *Pittsburgh* v. *Alco Parking Corp.*, 417 U.S. 369 (1974), in which the Supreme Court of the United States upheld an ordinance that imposed a twenty per cent tax on gross receipts from commercial parking lots.[9] We also reject the plaintiffs' argument that the excise tax was not undertaken in furtherance of a valid public purpose and therefore is invalid. The taxes will be deposited into the general fund. St. 1999, c. 16, § 7 (*b*) (2), as amended by St. 2000, c. 72, § 4. Moreover, to the extent that amounts collected are used to defray the contract assistance payments to the town, those payments are limited to costs associated with bonds issued for certain infrastructure improvements, St. 1999, c. 16, § 8, that are needed to "promote and enhance public safety and convenience." *Id.* at § 4. The promotion of public safety is clearly an important public purpose, and any private benefits are "merely incidental." *Opinion of the Justices*, 368 Mass. 880, 885 (1975), and cases cited.

5. We reject the plaintiffs' arguments that the Act denies them equal protection under the Fourteenth Amendment and art. 10. The right "to pursue one's business is [not] a fundamental right

---

[8]The plaintiffs' complaint alleges that the taking is also in violation of the State Constitution. However, the plaintiffs' brief only argues a violation under the Federal Constitution.

[9]The plaintiffs' contention that *Pittsburgh* v. *Alco Parking Corp.*, 417 U.S. 369 (1974), did not address the reasonableness of the ordinance at issue, misconstrues that case. The Supreme Court did address the reasonableness argument, and concluded that it was not "sufficient to invalidate the parking tax ordinance in [that] case." *Id.* at 373.

infringement of which deserves strict judicial scrutiny." *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 542 (1974). Because the plaintiffs are not "member[s] of a suspect group" and there is no "fundamental interest . . . involved, the statute will be upheld against an equal protection argument as long as it is rationally related to the furtherance of a legitimate State interest." *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n*, 429 Mass. 721, 722 (1999). See *Smith* v. *Commissioner of Revenue*, 383 Mass. 139, 141 (1981), citing *Weinstock* v. *Hull*, 367 Mass. 66, 70, appeal dismissed, 423 U.S. 805 (1975) ("Any distinction in a tax statute that has a rational basis will survive a challenge under the equal protection clause"). This standard applies under both the State and Federal Constitutions. *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 723, and cases cited. We have already concluded that there is a rational basis for distinguishing between parking lot operators that are within three miles of the stadium, and those that are farther away, to wit: the Legislature could have reasonably concluded that the benefit of operating a parking lot within close proximity to the stadium is greater than that of operating one farther away. "Legislative line drawing . . . does not violate equal protection principles simply because it 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Id.*, quoting *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970). Thus, the plaintiffs have failed to prove that the distinction between parking lot operators based on their proximity to the stadium violates the equal protection clauses of the Federal and State Constitutions.

The plaintiffs also posit that the Act violates provisions unique to art. 10. "Article 10 prohibits the Legislature from enacting special legislation which 'single[s] out any person for special privilege or advantages at the expense of the rights of another.' " *Boston* v. *Keene Corp.*, 406 Mass. 301, 306 (1989), quoting *Sciuto* v. *Lawrence*, 389 Mass. 939, 944 (1983). We reject the plaintiffs' argument that the Act serves "no discernible public purpose and operate[s] only to aggrandize the personal interests of a single party." *Kienzler* v. *Dalkon Shield Claimants Trust*, 426 Mass. 87, 91 (1997). The Legislature determined that the

construction of a new stadium would "significantly enhance the economic development and the general welfare of the commonwealth." St. 1999, c. 16, § 1. There is nothing in the record, or in the text of the Act, that would suggest that such legitimate public purposes are outweighed by any benefits conferred on a private party. See *id.* at 90-91 ("The critical inquiry is whether the challenged statute can be said to have some legitimate public purpose that predominates over the benefit it otherwise confers on private parties and over any injury to another party").

We also conclude that the Act does not, as the plaintiffs allege, "suspend the operation of a general law in favor of an individual." *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 742 (1975), quoting *Dickinson* v. *New England Power Co.*, 257 Mass. 108, 112 (1926). General Laws c. 148, § 56, which governs the licensure of commercial lots, remains in effect for all lot owners, including the plaintiffs. Thus, § 56 is supplemented, and not suspended by the Act. See *Fitz-Inn Auto Parks, Inc.* v. *Boston*, 389 Mass. 79, 82 (1983) ("The fact that Boston may regulate parking uses by zoning ordinances and may license open-air parking spaces pursuant to G. L. c. 148, § 56, does not bar further regulation by other means authorized by law").

6. The plaintiffs argue that the Act unreasonably interferes with their right to engage in any lawful occupation, in violation of the due process clauses of the State and Federal Constitutions.[10] This argument, however, overlooks the jurisprudence of the Supreme Court of the United States, that a tax "otherwise . . . within the power of Congress or of state legislative authorities," will not be invalidated under the due process clause of the Fifth Amendment solely because it is unreasonably high or "renders a business unprofitable." *Pittsburgh* v. *Alco Parking Corp.*, 417 U.S. 369, 373 (1974). "[A] tax within the lawful power of a State should not 'be judicially

---

[10]The plaintiffs make a separate argument that, because the Act is unreasonable, it deprives them of their property and liberty (in the form of the right to freedom of enterprise) without due process of law, in violation of arts. 1, as amended by art. 106 of the Amendments, and 10 of the Massachusetts Declaration of Rights, and the Fifth and Fourteenth Amendments. Because we have concluded that the Act is reasonable, we reject this argument.

stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses.' " *Id.* at 374, quoting *Magnano Co.* v. *Hamilton*, 292 U.S. 40, 44 (1934). Moreover, we have already concluded that there are valid bases on which the Legislature could have rationally based the excise tax, and that the tax is not wholly arbitrary. Thus, in these circumstances, there is no violation of due process.

7. The plaintiffs further contend that the excise tax "has substantially impaired the enforceable contracts between the parking lot owners and the town licensing authority," in violation of the contracts clause of the United States Constitution. This argument is without merit. Even if the plaintiffs' licenses were contracts protected under the contracts clause, the plaintiffs have failed to show that the excise tax "has in fact impaired any enforceable contractual obligation." *Massachusetts Community College Council* v. *Commonwealth*, 420 Mass. 126, 131 (1995), citing *United States Trust Co.* v. *New Jersey*, 431 U.S. 1, 17 (1977). We reject the plaintiffs' argument that the excise tax "so undermines the profitability" of their licenses as to constitute a substantial impairment, because there is nothing in the record that indicates that they cannot pass the amount of the excise tax on to their customers.

C. *Conclusion.* For the above stated reasons, we affirm the judgment of the Superior Court.

*So ordered.*