van Gestel, J.
Pursuant to a memorandum and order dated May 1, 2003, this Court denied and deferred the plaintiffs’ request for preliminary injunc-tive relief and set the matter down for trial on the merits and a hearing on injunctive relief for May 12, 2003. At the request of the parties, the trial was continued to May 21, 2003. What follows are this Court’s findings of fact, rulings of law and an order for judgment.
The case came before the Court in essence as a “case stated.” The parties have agreed that the facts involved are those in the affidavits filed by the plaintiffs and the defendant and those exhibits included as parts of the First Amended Complaint. The defendant challenges certain of the affidavits on relevancy grounds, but accepts them as otherwise accurate.
FINDINGS OF FACT
This matter involves G.L.c. 118G, Sec. 26, a statute adopted as an outside section[4] on the legislation for the Massachusetts budget for fiscal year 2003. See Acts of 2002, c. 184, Sec. 101. G.L.c. 118G, Sec. 26, in material part, reads as follows:
(a) For the purposes of this section, the following terms shall have the following meanings:
“Assessment,” for all pharmacies, an amount assessed upon each non-Medicare and non-Medicaid prescription dispensed by the pharmacies.
“Pharmacy.” Any retail drug business registered by the board of registration in pharmacy in accordance with chapter 112 that is authorized to dispense controlled substances, including, retail drug businesses as defined in Section 1 of chapter 94C.
(b) Each pharmacy shall pay an assessment upon each non-Medicare and non-medicaid [sic] prescription dispensed to the division quarterly.[5] The assessment shall be sufficient in the aggregate to generate $36 million in each fiscal year. The assessment shall be implemented as a broad-based health-care fee as defined in 42 U.S.C. Sec. 1396b(w)(3)(B). The division may promulgate regulations that authorize the assessment of interest on any unpaid liability at a rate not to exceed an annual percentage rate of 18 per cent and late fees at a rate not to exceed 5 per cent per month. The receipts from the assessment, any federal financial participation received by the commonwealth as a result of expenditures funded by these assessments and interest thereon shall be credited to the Health Care Security Trust Fund established by Section 29D.
Additionally included in the outside section to the 2003 budget bill as a separate section, but not codified in the General Laws, is c. 184, Sec. 186, which reads in part:
(b) Except as provided in subsection (d), the assessments established by Section 26 of chapter 118G shall not be collected and the expenditures required by clause (11) of paragraph (a) of Section 180 shall not be authorized until the division of medical assistance certifies that it has obtained federal approval of any related state plan amendments and of the availability of federal financial participation for MassHealth[6] expenditures funded in part or in whole by revenues collected from said assessments.
The Division of Health Care Finance and Policy (“DHCFP”) adopted certain regulations intended to implement the pharmacy assessment. Those regulations became effective on January 1, 2003. See 114.5 CMR secs. 13.01-13.05. Included therein, in Sec. 13.02, is the following definition:
Pharmacy. Any retail drug business registered by the board of registration in pharmacy in accordance with chapter 112 that is authorized to dispense controlled substances, including retail drug businesses as defined in Section 1 of chapter 94C, including retail store pharmacies, long-term care retail pharmacies, community health center pharmacies, hospital outpatient pharmacies and university/college infirmary pharmacies. The term pharmacy does not include hospital inpatient pharmacies.
On November 14, 2002, the Division of Medical Assistance (“DMA”) wrote to the Center for Medicaid and State Operations, known as the Center for Medicaid Services (“CMS”), seeking its assistance “in confirming the availability of federal financial participation (“FFP”) for certain Medicaid expenditures that will be funded by provider assessments newly established under state law (G.L.c. 118G, Sec. 26).”
In the letter to CMS, DMA stated that DHCFP “proposes to comprehensively define the term ‘pharmacy’ in its regulations” in the manner set forth above in 114.5 CMR Sec. 13.02.
On December 23, 2002, CMS responded. It said, among other things: “While we do not offer advisory opinions on State legislation, after review of the information provided in your November 14 request, it appears that Massachusetts’ tax on all non-Medicare, non-Medicaid prescriptions in the state would not trigger penalties under Section 1903(w)(3)(D) of the Social Security Act (the ’’Act”)."
Particularly, the CMS letter went on to say:
Based on the information provided in your letter, it appears that all pharmacies in the State [sic] of Massachusetts will pay a uniform tax on all non-Medicare, non-Medicaid prescriptions dispensed. Thus, the tax appears to be applied in a broad-based and uniform manner consistent with Sections 1903(w)(3)(B) and (C) of the Act.
On December 27, 2002 the DMA “certified” to the Commissioner of DHCFP that it had received the requisite Federal approval from CMS, and enclosed as *338 proof a copy of its November 14, 2002 letter and CMS’s reply of December 23, 2002.
On March 14, 2003 CMS responded to an inquiiy from the National Association of Chain Drug Stores. The inquiiy related to the new Massachusetts law and, evidently, suggested that it was not “broad-based” because outpatient hospital pharmacies were not included for the reason that they are not licensed by the State Board of Registry in Pharmacy. The CMS responded, saying: “This broader application of the tax beyond those entities licensed by the State Board was accomplished through regulation in order to ensure that the tax was broad-based and applied uniformly.”
It is in this posture that the plaintiffs have challenged G.L.c. 118G, Sec. 26.
RULINGS OF LAW
What is presented to the Court is an array of legislation, and actions taken purporting to comply therewith, that must be interpreted, construed and applied. As recently as May 8, 2003 the Supreme Judicial Court restated and reaffirmed long-held principles of statutory construction. In Commonwealth v. Clerk-Magistrate of the West Roxbury Div. of the Dist. Court Dep’t, 439 Mass. 352, 355-56 (2003), the SJC said:
It is a standard canon of statutoiy construction that “the primary source of insight into the intent of the Legislature is the language of the statute.” International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). A court may not add words to a statute that the Legislature did not put there. See General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999), and cases cited. “Statutoiy language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.” Sullivan v. Brookline, 435 Mass. 353, 360 (2001). See O’Brien v. Massachusetts Bay Transp. Auth., 405 Mass. 439, 443-44 (1989). Where, as here, the language of the statute is clear and unambiguous, it is conclusive as to the intent of the Legislature. See Pyle v. School Comn. of So. Hadley, 423 Mass. 283, 285 (1996).
Here, despite political pronouncements to the contrary at the time of the enactment of G.L.c. 118G, Sec. 26, what we are dealing with is an excise tax. Route One Liquors, Inc. v. Secretary of Administration and Finance, 439 Mass. 111, 116 (2003). The tax is imposed on those operators of any retail pharmacy “registered by the board of registration in pharmacy in accordance with chapter 112 that is authorized to dispense controlled substances, including, retail drug businesses as defined in Section 1 of chapter 94C.” Id. at 439 Mass. 116 n.3.
With the foregoing background, the Court now assesses the situation with regard to G.L.c. 118G, Sec. 26 and related law.
The defendant challenges the standing of the plaintiffs to attack the effectiveness of G.L.c. 118G, Sec. 26. Since the plaintiffs are the parties most directly affected by the tax, being the entities upon which it is imposed, this Court rules that their standing to bring this action is appropriate.
In addressing the substance of the plaintiffs’ challenges, the Court starts with the Legislature’s own dictate as to when the tax may be collected. Chapter 184, Sec. 186 of the Acts of 2002, mandates that “the assessments established by Section 26 of Chapter 118G shall not be collected . . . until the division of medical assistance certifies that it has obtainedfederal approval of any related state plan amendments and of the availability of federal financial participation for MassHealth expenditures funded in part or in whole by revenues collectedfrom said assessments.” (Emphasis added.)
Certification means much more than the form in DMA’s December 27, 2002 letter to the Commissioner. There must be substance behind and supporting that form as well. “A certificate has been defined as a ‘written assurance, or official representation, that some act has or has not been done, or some event occurred, or some legal formality (has) been complied with.’ Black’s Law Dictionary (4th ed.). See Dolan v. United States, 133 F. 440, 449 (8th Cir.); United States v. Naughten, 195 F.Sup. 157 (N.D.Cal.).” Kay-Vee Realty Co. v. Town of Ludlow, 355 Mass. 165, 168 (1969). There is implicit in the word “certification” that in substance the party making the certification accomplished or performed what it is attesting-to.
Here, the Legislature wanted certification “that DMA obtained federal approval of [G.L.c. 118G, Sec. 26] and of the availability of federal financial participation for MassHealth expenditures funded in part or in whole by revenues collected from said assessments.” While the words of the December 27, 2002 letter may imply so, that surely is not what DMA obtained from CMS or the Commissioner received from DMA.
The DMA truly sought the requisite approval from CMS, as mandated by Acts of 2002, c. 184, Sec. 186. However, it did not succeed in that effort. At most, the DMA received a comment from CMS to the effect that it appeared that the DHCFP regulatoiy expansion of the reach of the assessment made it broad-based for purposes of the Federal statute.
It is in no way an improper intermeddling by this Court to simply read the exchange of correspondence between DMA and CMS and observe whether it achieved the statutoiy objective. What that correspondence shows, in plain language, was not Federal approval of anything.
CMS, in its response, clearly stated that it does not give advisoiy opinions on state legislation. Consequently, it approved of nothing, and merely proffered advice it was not asked for — that G.L.c. 118G, Sec. 26 *339 would not trigger penalties under Sec. 1903(w)(3)(D) of the Social Security Act. G.L.c. 118G, Sec. 26 did not mention such penalties. Rather, it states that the law must “be implemented as a broad-based health-care fee as defined in 42 U.S.C. Sec. 1396b(w)(3)(B).”
Chapter 184, Sec. 186, of the Acts of 2002, requires “federal approval of any related state plan amendments [e.g., G.L.c. 118G, Sec. 26] and of the availability of federal financial participation for MassHealth expenditures funded in part or in whole by revenues collected from said assessments.” On any reading of the CMS’s December 23, 2002 letter, such approval was not obtained, nor was federal financial participation said to be available. As the CMS letter explains, it “doles] not offer advisoiy opinions on State legislation.”
Also, CMS made quite clear — both to DMA and the National Association of Chain Drug Stores — that it was acting under an assumption that the DHCFP regulatory definition of pharmacy was sufficient to meet the Federal “broad-based” test. One can only speculate— but given CMS’s reliance upon the expanded definition of “pharmacy” in the DHCFP regulations, perhaps not wildly — that a more limited definition, such as that chosen by the Legislature in c. 118G, Sec. 26, would not be sufficient. As set forth below, however, DHCFP had no authority to impose a tax broader in its reach than that dictated by the Legislature. Consequently, the necessary “broad-based" element sought by the Legislature is absent.
The language chosen by the Legislature includes pharmacies registered by the Board of Registration in Pharmacy in accordance with G.L.c. 112, “including, retail drug businesses as defined in Section 1 of chapter 94C.”
Chapter 94C is the Controlled Substances Act. Section 1 thereof defines many things relating to the illegal drug trade. It also includes a definition for pharmacy: “A facility under the direction or supervision of a registered pharmacist which is authorized to dispense controlled substances, including but not limited to ‘retail drug business’ as defined below.”
Below, in G.L.c. 94C, Sec. 1, is the definition of “retail drug business.” It reads: “A store for the transaction of ‘drug business’ as defined in Section thirty-seven of chapter one hundred and twelve.”
G.L.c. 112 deals with the registration of certain professions and occupations. Secs. 37 through 42A cover the registering and licensing of stores for transacting a retail drug business. A reading of Secs. 37 through 42A makes clear that what is being discussed is a “store or retail food store pharmacy department or retail store pharmacy department.” In short, a stand-alone pharmacy, a pharmacy department in a retail food store or a pharmacy department in a retail store. The definition does not include institutional pharmacies such as those in outpatient departments of hospitals, health maintenance organizations and clinic pharmacies, which non-inclusion is confirmed by 247 CMR 2.00.
The Legislature is constitutionally authorized to levy excises “upon any produce, goods, wares, merchandise and commodities.” Part II, C. 1, §1, art. 4, of the Massachusetts Constitution. The term “commodities” encompasses “convenience, privilege, profit, and gains.” Minot v. Winthrop, 162 Mass. 113, 120 (1894).
Emerson College v. City of Boston, 391 Mass. 415, 427 (1984). See also Opinion of the Justices, 393 Mass. 1209, 1219-20 (1984).
The power to levy specific taxes rests exclusively with the Legislature. Massachusetts Constitution, pt. 2, c. 1, Sec. 1, art. 4. For this reason the power to establish taxes cannot be delegated. Only the power to administer taxes once established by the Legislature may be delegated, and when there is such a delegation, there must be “clear legislative standards provided to guide the officer in exercising the delegated authority in accordance with legislative policy." Opinion of the Justices, supra, 393 Mass. at 1220.
In G.L.c. 118G, Sec. 26, the Legislature established a tax on retail drug businesses registered by the Board of Registration in Pharmacy under G.L.c. 112. As seen above, that includes only stand-alone drug stores, pharmacies in food stores and pharmacies in other retail stores. DHCFP attempted by its regulations to establish a tax on other persons or entities, particularly “long term care retail pharmacies, community health center pharmacies, hospital outpatient pharmacies and university/college infirmary pharmacies.” This it had no power to do. “(A]n administrative agency has no authority to promulgate rules or regulations that conflict with [ ] statutes or exceed the authority conferred by [ ] statutes.” Massachusetts Mun. Wholesale Elec. Co. v. Mass. Energy Facilities Siting Council, 411 Mass. 183, 190 (1991). See also Massachusetts Hosp. Assoc. v. Dept. of Med. Sec., 412 Mass 340, 342 (1992).
The foregoing analysis leaves the parties in just that position in which the Legislature commanded that the tax established by G.L.c. 118G, Sec. 26 shall not be collected, there being no effective Federal approval of the statute or that there would be, in connection therewith, Federal financial participation for expenditures funded by the tax.
ORDER FOR JUDGMENT
For the various reasons set out in the findings and rulings above, this Court orders that judgment enter declaring that the assessments imposed by G.L.c. 118G, Sec. 26, are invalid and unenforceable for the failure to satisfy the prerequisites of the Acts of 2002, c. 184, Sec. 186(b), and directing that any payments made to date must be refunded to the payors.
*340 Further, the Division of Health Care Finance and Policy is enjoined and restrained from collecting any taxes imposed by G.L.c. 118G, Sec. 26, and from imposing any penalties for failure to pay such taxes as established in its regulations.

As this decision will reflect, “outside sections” of the Massachusetts budget are hardly the most appropriate way to adopt legislation, particularly important tax legislation.

Although not significant to this decision, the Court notes that the grammatical structure of this sentence invites what is surely an unintended conclusion. The sentence, as written, can be read to say that the tax is to be paid on prescriptions “dispensed to the division quarterly.” No prescriptions, of course, are dispensed to the Division of Health Care Finance and Policy.

Massachusetts Medicaid.